IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES FIDELITY AND GUARANTEE CO., | Case No. 2:07 cv 996 BCW (SEALED) |
| Plaintiff, | **ORDER AND MEMORANDUM DECISION** |
| vs. | |
| UNITED STATES SPORTS SPECIALTY ASSOCIATION, | Magistrate Judge Brooke C. Wells |
| Defendant. | |

This case arises from a series of unfortunate events involving a boy, Dalton Nielson, who

suffered a traumatic head injury when he was hit by a bat during an adult softball game.  Dalton

and his parents sued for damages in state court.  A jury awarded the Nielsons approximately $6

million dollars in the underlying state case finding United States Sports Specialty Association

(USSSA) and state co-defendant USSSA-Utah more than 90% at fault for the accident.  The

Plaintiff in this action United States Fidelity and Guarantee Company (USF&G) is USSSA's

insurer.  USF&G filed the instant action to determine its obligations for the Judgment and

subsequent Settlement in the underlying state case.

Now before the court are USSSA's motion for partial summary judgment[1] and motion for continuance pursuant to Rule 56(f)[2] and USF&G's motion to strike[3] and motion to continue also under Rule 56(f).[4]  A hearing was held before the court on Februrary 20, 2009.  At the hearing, Plaintiff was represented by Rich Humphries and Defendant was represented by Alan Bradshaw.  As agreed upon by the parties and the court at the conclusion of the hearing, the court defers ruling on USF&G's motion to strike, motion to continue, and USSSA's motion to continue.

Now after considering the memoranda and other materials submitted by the parties, the law and facts related to USSSA's motion for partial summary judgment and upon further review of the transcript of oral arguments,[5] the court concludes the issues before it are appropriate for certification to the Utah State Supreme Court.  Accordingly, the parties are ORDERED to submit to this court a proposed joint Order Certifying Questions to the Utah Supreme Court by no later than June 19, 2009.

## BACKGROUND

USSSA is a national non-profit sports corporation.  Local sports leagues can register with USSSA and after paying certain fees to USSSA receive benefits such as liability insurance for the participants, officials, and directors that are involved in local sporting events.  USF&G is USSSA's liability insurer.  The underlying case that gave rise to this insurance dispute involved

---

[1] Docket no. 17.
[2] Docket no. 37.
[3] Docket no. 26.
[4] Docket no. 29.
[5] The court received the transcript of oral arguments on May 1, 2009.

Dalton Nielson, a seven year old boy who was struck in the head with a metal bat by the on deck

batter at an adult softball game as he attempted to return a foul ball to the umpire.  Dalton

suffered serious brain injuries from the accident.

Dalton Nielson's parents filed suit in state court against USSSA and a number of other

defendants including the on deck batter, the umpire, Lehi City, tournament sponsors and the state

director who was doing business as USSSA-Utah.  At trial only USSSA and USSSA-Utah

remained as defendants.  Eventually the jury awarded damages of $6,688,077 of which

approximately 6.1 million was allocated to USSSA and USSSA-Utah without differentiation.

USSSA makes numerous accusations in its memoranda of USF&G's misconduct during

its defense in the underlying action.  USF&G contests these accusations.  While the validity of

these accusations may impact this case at some point, the court finds they are not material to the

decision to certify questions to the Utah Supreme Court.

Following the verdict, USSSA hired appellate counsel and moved to stay execution

proceedings, filed a motion for new trial or in the alternative to alter or amend the judgment, and

for judgment notwithstanding the verdict.  USSSA encouraged USF&G to engage in settlement

negotiations with the Nielsons before a hearing on its post-trial motions.  The Nielsons rejected a

settlement offer of the policies' limit, 2 million dollars, made by USF&G.

At a hearing on USSSA's motion to stay execution held on December 12, 2007, the state

court judge granted a stay pending outcome of USSSA's post-trial motions and provided a

deadline of five business days for the posting of a judgment bond.  On this same date, USF&G

filed a bond for the policy limit plus interest, $2,033,057.92.  USSSA demanded that USF&G

post a bond for the entire judgment not just that of the policy limit.  USF&G communicated with

USSSA a number of times that it would be willing to post a bond for the entire judgment if

USSSA would consent to a reservation of rights.  USSSA never agreed to a reservation of rights.

Around this same time frame USSSA began accusing USF&G of bad faith and threatened to sue

USF&G for both general and punitive damages.  USF&G represents that these damages could

have approached "$80 to $90 million."[6]

On approximately December 21, 2007, two days following the state court deadline for

posting a bond for the entire judgment, USF&G posted a second bond in the amount of

$4,186,471.20.  This brought the total amount bonded by USF&G to $6,219.529.14, which was

the judgment amount owed by USSSA and USSSA-Utah.  According to USF&G this was done

"under a clear reservation of rights to protect USSSA from execution and to limit its own

potential exposure to possible bad faith damages."[7]

Following the posting of the bond for the entire judgment, USF&G began negotiating a

settlement with the Nielsons.  During this time USF&G and USSSA again exchanged numerous

communications concerning USF&G's repeated requests for USSSA to contribute toward the

settlement, or agree that USF&G and USSSA could pursue claims against each other upon

---

[6] Op. p. iii.
[7] *Id.* p. iv.

USF&G paying a settlement amount to the Nielsons.[8]  USSSA rejected these requests and continued to demand that USF&G pay the Judgment or a settlement to the Nielsons.

On March 10, 2008, the parties held a face-to-face mediation session.  The mediation resulted in a settlement amount of $4,825,0000.  USSSA encouraged USF&G to accept the settlement.  Following the mediation the parties again exchanged numerous communications.  Counsel for USSSA explicitly stated that USF&G was the one settling, not USSSA.[9]  USSSA did not sign the Settlement Agreement and Release.  On approximately June 18, 2008, the Nielsons filed a Satisfaction of Judgment in the underlying lawsuit.

## STANDARD

Federal Rule of Civil Procedure 56 permits the entry of summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[10]  The court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[11]  "The mere existence of a scintilla of evidence in support of [a party's] position

---

[8] These communications are set forth at length in the parties' memoranda.

[9] *See* Mem. in Supp. exs. EE, HH, NN, QQ, SS, UU.

[10] Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Alder v. Wal-Mart Sotres, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[11] *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

will be insufficient [to overcome a motion for summary judgment]; there must be evidence on

which the jury could reasonably find for the [respective party]."[12]

## ANALYSIS

In this declaratory judgment action, Plaintiff USF&G seeks a determination that it is not

responsible for the Judgment or Settlement in excess of its policy from the underlying lawsuit.

In opposition, USSSA has moved for partial summary judgment seeking an order from this court

declaring that USF&G is obligated to pay the entire amount of the Judgment and that USF&G

has no right to seek recovery from USSSA.  Whether an insurer has a right to reimbursement or

restitution against an insured, and whether the insurer's payment in excess of a policies' limit

impacts any such right, are questions that the Utah Supreme Court and Utah Court of Appeals

have yet to address.  These issues are controlling in this case because if such a right of restitution

is permitted under Utah law, USF&G has a claim to the money it paid in excess of the policy

limit.  If, on the other hand, such a right of restitution does not exist, this case will be resolved

quite quickly without the added time and expense of involving third-party administrators and re-

insurers.  During oral argument counsel for USF&G stated that "this case would be an excellent

candidate to . . . certify and have the Utah Supreme Court decide the issue."[13]

---

[12] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *see also Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1175 (10th Cir. 1999) ("A mere scintilla of evidence supporting the nonmoving party's theory does not create a genuine issue of material fact.").

[13] Tr. 28.  Tr refers to the transcript of oral arguments.

USSSA first argues USF&G's payment was voluntary and points out that numerous

courts recognize that an insurer does not have a right to reimbursement against an insured.[14]  For

example, in *Mt. Airy Ins. Co v. Doe Law Firm*,[15] the Alabama Supreme Court held that the

insurance company was not entitled to recover from the policyholder the settlement amount paid

by the insurance company.  The court stated, "where one party, with full knowledge of all the

facts, voluntarily pays money to satisfy the colorable legal demand of another, no action will lie

to recover such a voluntary payment, in the absence of fraud, duress, or extortion."[16]  The *Mt.*

*Airy* court also rejected the plaintiff's argument that the threat of legal proceedings constituted

the duress needed to make the payment of money involuntary-an argument made by USF&G in

this case.[17]  Next, in *Excess Underwriters at Lloyd's*,[18] the Texas Supreme Court recently held

that there was no implied right to reimbursement for an excess insurer even when the insured

consented to the settlement.  Finally, in *Med. Malpractice Joint Underwriting Ass'n of Mass. v.*

---

[14] *See Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools*, 246 S.W.3d 42 (Tex. 2008) (holding the insurer was not entitled to reimbursement for payment of excess funds above policy limits even though the insured consented to the settlement); *Coregis Ins. Co. v. Law Offices of Carole F. Kafrissen, P.C.*, 140 F. Supp2d 461 (E.D.Pa. 2001) (holding that the insurer could not recover from its insured payment that it voluntarily made to settle a lawsuit against its insured); *Texas Ass'n of Counties County Government Risk*, 52 S.W.3d 128 (Tex. 2000) (holding that the insured's silence did not create an implied-in-fact contract to reimburse the insurer and the insurer was not entitled to reimbursement under theories of unjust enrichment, quantum meruit, or equitable subrogation).
[15] 668 So.2d 534 (Ala. 1995).
[16] *Id.* at 537.
[17] *See id.* at 538.
[18] 246 S.W.3d 42 (Tex. 2008).

*Goldberg*,[19] the Massachusetts Supreme Judicial Court held that a liability insurer was not entitled to reimbursement of a settlement not authorized by the insured.

USSSA argues that it is a fundamental tenet of insurance and contract law that an insurer has no duty to file an appeal bond in excess of limits. In essence, once a party voluntarily undertakes to satisfy the debt of another, that party cannot seek recovery from the party who owed the debt.[20] Utah courts have recognized this principle.[21] Moreover, in this case, USF&G was fully advised by their own adjustor that:

> Utah is likely to follow the modern trend and the current majority position. The current majority position requires an insurer to post a bond only up to policy limits because the insurer would otherwise become "obligated for the entire judgment if the case is affirmed on appeal."[22]

Therefore, according to USSSA, USF&G is not entitled to any reimbursement of funds that were voluntarily paid in satisfaction of the Judgment.

USF&G, on the other hand, points out that while the above cases may reflect the majority position, the cases cited to by USSSA are adverse to the Restatement's approach-which some

---

[19] 680 N.E.2d 1121 (Mass. 1997).

[20] *See Morris v. Tarin*, 1 U.S. 147, 148-49 (1785); *see also* 66 Am.Jur.2d, *Restitution and Implied Contracts*, § 108 ("The rule is well settled that a person cannot recover money that he or she has voluntarily paid with full knowledge of all the facts and without fraud, duress, or extortion in some form and that no action will lie to recover the voluntary payment.").

[21] *See RMA Ventures v. SunAmerica Life Ins.*, 2007 WL 4206952 *4 (D.Utah November 26, 2007) ("The Voluntary Payment Doctrine bars recover of money voluntarily paid with a full knowledge of all the facts, in the absence of fraud, duress or compulsion."); *Dick v. Am. Nat'l Mortgage*, 510 P.2d 1096, 1096-97 (Utah 1973) (concluding that the plaintiffs "made the payments . . . without any obligation to do so under the terms of the contract, and they did so as volunteers."); *Intermountain Lumber Co. v. Daniels*, 448 P.2d 910, 912 (Utah 1968) (holding supplier who paid the sales tax of another party was not justified in recovering the payment).

[22] Mem. in Supp. p. 3 (quoting Statement of Facts ¶ 8) (quoting *Bowen v. Gov't Employees Ins. Co.*, 451 S.2d 1196, 1198 (La.Ct.App. 1984)).

courts have adopted.  Utah has yet to weigh in on the subject.  The seminal case in support of

USF&G's position is *Blue Ridge Insurance Co. v. Jacobsen*.[23]  In *Blue Ridge*, the California

Supreme Court held that an insurer could seek reimbursement of a settlement for an uncovered

claim from its insureds, even though the insureds refused to consent to the settlement.  The court

looked to basic notions of fairness and explained:

> were we to conclude insureds could, as in this case, refuse to assume their own defense,
> insisting an insurer settle a lawsuit or risk a bad faith action, but at the same time refuse
> to agree the insurer could seek reimbursement should the claim not be covered, the
> resulting Catch-22 would force insurers to indemnify noncovered claims. If an insurer
> could not unilaterally reserve its right to later assert noncoverage of any settled claim, it
> would have no practical avenue of recourse other than to settle and forgo reimbursement.
> An insured's mere objection to a reservation of right would create coverage contrary to
> the parties' agreement in the insurance policy and violate basic notions of fairness.[24]

In applying these "basic notions of fairness" the court listed three prerequisites for

seeking reimbursement: "(1) a timely and express reservation of rights; (2) an express

notification to the insureds of the insurer's intent to accept a proposed settlement offer; and (3) an

express offer to the insureds that they may assume their own defense when the insurer and

insureds disagree whether to accept the proposed settlement."[25]  USSSA argues that USF&G

fails to meet these prerequisites.  So, even if this court were to adopt the reasoning found in *Blue

Ridge*-something which USF&G urges this court to do-USSSA alleges USF&G would fail to

qualify for a right to reimbursement.  The court, however, finds it appropriate to wait until the

---

[23] 22 P.3d 313 (Cal. 2001).
[24] *Id.* at 321.
[25] *Id.* at 320-21.

Utah Supreme Court weighs in on the issue because that Court may decline to set forth any prerequisites for reimbursement.

Next, USF&G points out that the cases cited to by USSSA are contrary to basic principles of restitution and the prevention of unjust enrichment.  Under these principles, "'[a] person who is unjustly enriched at the expense of another is liable in restitution to the other.'"[26] Utah courts apply this principle and have stated that "[u]njust enrichment occurs when a person has and retains money or benefits that in justice and equity belong to another."[27]

Finally, the court recognizes that the Utah Supreme Court has stated that "[w]here factual questions render coverage uncertain . . . the insurer must defend until those uncertainties can be resolved against coverage."[28]  Thus, "[w]hen in doubt, defend."[29]  Given the circumstances in this case, it may have been more appropriate for USF&G to defend USSSA by posting a bond for the entire judgment to protect USSSA from post judgment proceedings-rather than declining to do so-until the issue of coverage could be resolved.

During oral argument counsel for USSSA stated that "a choice of law between Florida and Utah law needs to be made if the Court finds that Utah law and Florida law would be

---

[26] Op. p. 1. (quoting *Restatement (Third) of Restitution & Unjust Enrichment* § 1 (Discussion Draft 2000)).
[27] *Hess v. Johnston*, 163 P.3d 747, 754, 2007 UT. App. 213 ¶ 21.  The court notes that the *Hess* court did go on to qualify the principle of unjust enrichment and stated that "[t]he fact that a person benefits another is not itself sufficient to require the other to make restitution." *Id.* (quoting *Fowler v. Taylor*, 554 P.2d 205, 209 (Utah 1976)).
[28] *United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 521 (Utah 1993) (internal quotation marks omitted); *see also Farmers Ins. Exch. v. Versaw*, 2004 UT 73, ¶ 24, 99 P.3d 796.
[29] *Sandt*, 854 P.2d at 521 (quoting *Appleman on Insurance Law and Practice* § 136.2(C) (2d ed.2006)).

different on the key point that's [in USSSA's motion]."[30] Florida follows the majority trend of

not recognizing a right to reimbursement for an insurer. Counsel then went on to surmise that

"Utah is not going to do something different than what Florida has done."[31] So according to

USSSA, there would be no difference between Florida and Utah law. Thus, in contrast to

USF&G's position, there is no need to certify the issues in this case to the Utah Supreme Court.

USSSA further alleges that even if there was a difference between Utah and Florida law, Florida

law would apply.[32]

The court is not persuaded by USSSA's arguments. As noted by the parties, there is not

any Utah law directly on point dealing with the right of reimbursement of an insurer against its

insureds. And, as outlined above, this issue is controlling in this case. Further, the court finds it

unnecessary to engage in a conflict of laws analysis because a conflict between Utah law and

Florida law does not exist at this time. But, the court does note that under Utah's "most

significant relationship"[33] approach, the issue regarding which law should apply to this case is

not as clear as counsel for USSSA would have this court believe.

---

[30] Tr. 5.

[31] *Id.*

[32] *See id.*

[33] When resolving choice of law for tort claims, Utah applies the "most significant relationship" approach under which consideration is taken of several factors in order to determine what substantive law should apply. *Rowe v Albertsons Inc.*, 116 Fed. Appx. 171, 2004 U.S. App. LEXIS 20959 (10th Cir.). Those factors include, "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Id.* (quoting Restatement (Second) Conflict of Laws § 145(2) (1971)).

## CONCLUSION

Accordingly, the court concludes the questions in this case should be certified to the Utah

Supreme Court.  The court directs both parties to file, by no later than June 19, 2009, a proposed

Order Certifying Questions to the Utah Supreme Court.  The proposed Order should comply with

Rule 41 of the Utah Rules of Appellate Procedure and the parties are encouraged to stipulate to

the proposed Order. The Utah Supreme Court's decision-if they choose to accept the issues in

this case-will then dictate the next step in this litigation.

The Clerk of Court is directed to administratively close this case following certification

of issues to the Utah State Supreme Court until that Court notifies this court of its decision.  At

that point, the court will reopen the case and take the appropriate action.


DATED this 15th day of May, 2009.


_____
Brooke C. Wells
United States Magistrate Judge